IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

Moina Fontanez, Paul Lucas, Robert Lucas
Timothy Queen, Winford Lucas, Shaun Witholt,
James Lucas, Jr., Margaret Peck, Amelia Drawl,
John Shumar, James Shumar, DeWanda King,
Sidney Lucas, Jr., William Lucas, and Sheila
Owens, Gail House and Thomas Lucas,

                         Plaintiffs,                    CIVIL ACTION NO:  2:22-cv-00232

v.

Diversified Gas & Oil Corporation, Nytis Exploration
Co., LLC., Addington Exploration, LLC., Cabot Oil &
Gas Corp., P & S Oil & Gas Company, Base Petroleum,
Inc., and Mahue Construction Company, and William
Grant McCarty,

                         Defendants,

Mona Duty, Patricia Adams Brewster,
Sharon Parsley, Steven Adams, Randy
Adams,

                         Indispensable Parties,

                                                              **JURY TRIAL DEMANDED**

**COMPLAINT**

        AND NOW comes the Plaintiffs, by and through their attorneys, John Newborg, Esquire

and Joseph Spano, Esquire, and files the following Complaint, averring as follows:

**JURISDICTION**

        1.        The District Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332

due to diversity of citizenship and the amount in controversy exceeds $75,000.00.

## PARTIES

2.      Plaintiff, Moina Fontanez, is an adult individual residing at 5017 W. Altgeld Street, Chicago, Illinois 60639.

3.      Plaintiff, Paul Lucas, is an adult individual residing at 2111 North Latrobe Ave., Chicago, Illinois 60634.

4.      Plaintiff, Robert Lucas, is an adult individual residing at 323 South 3rd St., Apt 2, Rochelle, Illinois 61068.

5.      Plaintiff, Timothy Queen, is an adult individual residing at 555 Essex Ct. N.E., Palm Bay, Florida 32907.

6.      Plaintiff, Winford Lucas, is an adult individual residing at Trace Fork Rd., Chapmanville, West Virginia 25508.

7.      Plaintiff, Shaun Witholt, is an adult individual residing in Belington, West Virginia 43732.

8.      Plaintiff, James Lucas, Jr., is an adult individual residing at 14 Warsaw Drive, Charleston, West Virginia 25306.

9.      Plaintiff, Margaret Peck, is an adult individual residing at 458 Murry's Chapel Rd., Honaker, Virginia 24260.

10.     Plaintiff, Amelia Drawl, is an adult individual residing at 7167 Farnham Dr., Mentor, Ohio 44060.

11.     Plaintiff, Sheila Owens, is an adult individual residing at 5446 Township Rd., Cardington, Ohio 43315.

12.     Plaintiff, John Shumar, is an adult individual residing at 3476 East 89th St., Cleveland, Ohio 44104.

13.     Plaintiff, James Shumar, is an adult individual residing at 55381 Iowa Rd., Cumberland, Ohio 43732.

14.     Plaintiff, DeWanda King, is an adult individual residing at 267 East Casstell Avenue, Barberton, Ohio 44203.

15.     Plaintiff, Sidney Lucas, Jr., is an adult individual residing at 397 Trace Fork Rd., Chapmanville, West Virginia 25508.

16.     Plaintiff, William Lucas, is an adult individual residing at 2949 High Court, Roseville, Minnesota 55113.

17.     Plaintiff, Gail House, is an adult individual residing at 10900 State Route 26, Carthage, NY 13619.

18.     Plaintiff, Thomas Lucas, is an adult individual residing at 101 Payran St., Petaluma, CA 94952-3205.

**DEFENDANTS**

19.     Defendant, Diversified Gas & Oil Corporation, is a company engaged in the business of extracting oil and gas and other underground resources doing business in West Virginia with its principal office located at 1800 Corporate Drive, Birmingham, Alabama 35242.

20.     Defendant, Diversified Gas & Oil Corporation is the parent organization over Defendant Nytis Exploration Co., LLC.

21.     Defendant, Nytis Exploration Co., LLC, is a subsidiary of Diversified Gas & Oil Corporation is a company engaged in the business of extracting oil and gas and other underground resources doing business in West Virginia with its principal office located at 1700 Broadway, Suite 1170, Denver, CO, 80290-1704.

23.     Defendant, Nytis Exploration Co., LLC, is the successor-in-interest to Defendant, Addington Exploration, LLC.

24.     Defendant, Addington Exploration, LLC, was a company engaged in the business of extracting oil and gas and other underground resources doing business in West Virginia with its principal office located at 1500 N. Big Run Rd., Ashland, KY 41102.

25.     Defendant, Cabot Oil & Gas is a company engaged in the business of extracting oil and gas and other underground resources doing business in West Virginia with its principal office located at Three Memorial City Plaza, 840 Gessner Road, Suite 1400, Houston, Texas 77024.

26.     Defendant, Base Petroleum, Inc., is a company engaged in the business of extracting oil and gas and other underground resources doing business in West Virginia with its principal office located at 100 Wilcox Farm Ln., South Charleston, WV  25309-4702

27.     Defendant, Mahue Construction Company, is a company engaged in the business of extracting oil and gas and other underground resources doing business in West Virginia with its principal office located at 8048 Court Avenue, Hamlin, West Virginia 25523.

28.     Defendant, P & S Oil is a company engaged in the business of extracting oil and gas and other underground resources doing business in West Virginia with its principal office located at 9150 Huebner Rd., Suite 200, San Antonio, TX 78240.

29.     Defendant, William McCarty, is an adult individual residing at 1551 East 240 North, Anderson, Indiana 46012.

## INDISPENSABLE PARTIES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 19

30.     The individuals named below are subject to service of process and their joinder in this case will not deprive the court of subject-matter jurisdiction

31.      The below individuals have an interest relating to the subject of this case and disposing of this action in the individual's absence may impair the individual's ability to protect his or her interests.

32.     Indispensable Party, Mona Duty, is an adult individual residing at 4176 Monterey Drive, Medina, OH 44256

33.     Indispensable Party, Patricia Brewster, is an adult individual residing at 2191 Crawly Creek Road, Chapmanville, West Virginia 25508.

34.     Indispensable Party, Sharon Parsley, is an adult individual residing at 2277 Salem Ave., Grove City, Ohio 43123.

35.     Indispensable Party, Steven Adams, is an adult individual residing at 412 Carolina Dr., Oakdale, Pennsylvania 15071.

36.     Indispensable Party, Randy Adams, is an adult individual residing at 323 Trace Fork Rd., Chapmanville, West Virginia 25508.


## THE SURVIVING LINEAL HEIRS OF J.V. LUCAS

37.     J.V. Lucas, died on December 3, 1960, was a resident of Logan County, West Virginia.

38.     J.V. Lucas's wife, Lydia Lucas, predeceased J.V. Lucas.

39.     J.V. Lucas had nine children with Lydia, one of whom, Grady Lucas died before J.V. Lucas died.

40.     When Grady Lucas died he left two minor children, Thomas Lucas and Gail Lucas, now Gail House.

41.     J.V. Lucas executed a will on January 12, 1955, prior to the death of his wife and his son, Grady.

42.     J.V. Lucas, during his lifetime, acquired certain real property in Logan County, West Virginia.

43.     Certain of the real property J.V. Lucas acquired, included the rights to the minerals and other resources located below the surface of the properties.

44.     When J.V. Lucas died he was a widower, and had eight living children as follows: Paul Lucas, Jesse Bowden Lucas, Blanche Pardue, Ida Gatewood, Ella Elizabeth Dalley, Seybert Lucas, Ray Lucas and Laine Lucas, and one deceased child, Grady Lucas, who left two minor children, Thomas Lucas and Gail Lucas, now Gail House.

45.     On January 18, 1961 the will of J.V. Lucas was placed into probate in the Orphans Court of Logan County, West Virginia and recorded at Will Book 7, page 134.

46.     The J.V. Lucas will provided that all the mineral rights that J.V. Lucas owned would go to his then living nine children "share and share alike".  Attached hereto and marked Exhibit "A" is a copy of the will.

47.     At the time of J.V. Lucas' death, J.V. Lucas owned the mineral rights under the surface of the following properties in Logan County, West Virginia, recorded at Deed Book Volumes and Pages as follows:

(a)     Deed Book Volume 70, p. 37

(b)     Deed Book Volume 71, p. 82

(c)     Deed Book Volume 77, p.-224

(d)     Deed Book Volume 78, p. 170

(e)     Deed Book Volume 92, p. 183

(f)     Deed Book Volume 102, p. 335

(g)     Deed Book Volume-122, p. 336

48.     Attached hereto and marked Exhibit "B" are the land descriptions for each of the above referenced deeds.

49.     Upon the death of J.V. Lucas the mineral rights were inherited, "share and share" alike by the following children of J.V. Lucas:

a)     Paul Lucas
b)     Jesse Bowden Lucas
c)     Blanche Pardue
d)     Ida Gatewood
e)     Ella Elizabeth Dalley
f)     Seybert Lucas
g)     Ray Lucas
h)     Laine Lucas

50.     All of the above are now deceased

51.     On the death of J.V. Lucas, his two then minor grandchildren, Gail Lucas, now Gail House and Thomas Lucas, inherited the mineral rights.

52.     Gail Lucas, now Gail House, and Thomas Lucas are still living.

53.     Paul Lucas died without a will, without a spouse and without issue.

54.     Ida Gatewood died a widow with no children, but had a will which stated that her estate was bequeathed to her then living brothers and sisters, to wit: Blanche Pardue, Ray Lucas, Paul Lucas, Laine Lucas and Ella Elizabeth Dalley.

55.     Laine Lucas died without a will, without a spouse and without issue.

56.     Under the laws of intestacy, upon the death of an individual whose parents are deceased and who have no spouse or children, the brothers and sisters inherit from the deceased brother or sister.

57.     Therefore, upon the death of Paul Lucas, Ida Gatewood and Laine Lucas, the mineral rights were inherited by:

        a)     Jesse Bowden Lucas
        b).    Blanche Pardue
        c).    Ella Elizabeth Dalley
        d).    Seybert Lucas
        e).    Ray Lucas

58.     The following children of J.V. Lucas, who had children are as follows:

        a)     Blanche Pardue
        b)     Ella Elizabeth Dalley
        c)     Seybert Lucas
        d)     Ray Lucas
        e)     Jesse Bowden Lucas

## BLANCHE PARDUE

59.     Blanche Pardue, deceased, had 4 children: Roberta Lee Adams, Betty June McCarty, Etta Jean Queen and Oral John Pardue.

60.     Oral John Pardue died on April 25, 1955 unmarried, without a will and without children.

61.     Betty June McCarty, deceased, had a son, William McCarty, Defendant herein, who is alive and residing at 1551 East 240 North, Anderson, IN 46012.

62.     Etta Jean Queen, deceased, had two sons Robbie Queen, deceased, who died without a will and without children and Timothy Queen, Plaintiff herein, who is alive and residing at 555 Essex Ct. N.E., Palm Bay, Florida 32907.

63.     Roberta Lee Adams, deceased, had three children named Randy Adams, Steven Brian Adams and Patricia Adams Brewster.

64.     Randy Adams, is alive and resides at 323 Trace Fork Rd., Chapmanville, West Virginia 25508.

65.     Steven Adams is alive and resides at 412 Carolina Dr., Oakdale, Pennsylvania 15071.

66.     Patricia Adams Brewster is alive and resides at 2191 Crawley Creek Rd., Chapmanville, West Virginia 25508.


**ELLA ELIZABETH DALLEY**

67.     Ella Elizabeth Dalley, deceased, had one adopted daughter named Sharon Parsley, Indispensable Party herein, who is alive and resides at 2277 Salem Ave., Grove City, Ohio 43123.

**SEYBERT LUCAS**

68.     Seybert Lucas, deceased, widower, had one adopted son named Johnny D. Lucas who is deceased, who died without a will and without children.

**RAY LUCAS**

69.     Ray Lucas had seven children named: James Lucas, Amelia Drawl, Nellie Collins, Winford Lucas, Margaret Peck, Lester Lucas and Sidney Lucas

70.     Lester Lucas died without a will and without children, son died as a teenager

71.     James Lucas is deceased, who died a widower without a will, had two children, Sean Witholt and James Edward Lucas, Jr.

72.     Shaun Witholt, Plaintiff herein, is alive and residing at 55381 Iowa Rd., Cumberland, Ohio 43732.

73.     Shaun Withold is the natural child of James Witholt, but was born out-of-wedlock.

74.     James Edward Lucas, Jr, Plaintiff herein, is alive and residing at 14 Warsaw Dr., Charleston, West Virginia 25306.

75.     Margaret Peck, Plaintiff herein, is alive and residing at 458 Murry's Chapel Rd., Honaker, Virginia 24260

76.     Amelia Drawl, Plaintiff herein, is alive and residing at 7167 Farnham Dr., Mentor, Ohio 44060

77.     Nellie Collins, who is a deceased widow without a will, had 3 children: a) John Shumar; b) James Shumar; c) DeWanda King.

78.     John Shumar, Plaintiff herein, is alive and residing at 3476 East 89th St., Cleveland, Ohio 44104

79.     James Shumar, Plaintiff herein, is alive and residing at 55381 Iowa Rd., Cumberland, Ohio 43732.

80.     DeWanda King, Plaintiff herein, is alive and residing at 267 East Casstell Avenue, Barberton, Ohio 44203

81.     Winford Lucas, Plaintiff herein, is deceased and he had one son William D. Lucas who is alive and residing at 2949 High Court, Roseville, Minnesota 55113

82.     Sidney Lucas, Sr. is deceased, and he had five children, Mona Fontanez, Robert Lucas, Paul Lucas, Sidney Lucas, Jr. and Winford Lucas

83.     Moina Fontanez, Plaintiff herein, is alive and residing at 5017 W. Altgeld St., Chicago, Illinois 60639.

84.     Robert Lucas, Plaintiff herein, is alive and residing at 323 South 3rd St., Apt 2, Rochelle, Illinois 61068.

85.     Paul Lucas, Plaintiff herein, is alive and residing at 2111 North Latrobe Ave., Chicago, Illinois 60634.

86.     Sidney Lucas, Jr. Plaintiff herein, is alive and residing at 397 Trace Fork Rd., Chapmanville, West Virginia 25508.

87.     Winford Lucas, Plaintiff herein, is alive and residing at Trace Fork Rd., Chapmanville, West Virginia 25508.


**BOWDEN LUCAS**

88.     Bowden Lucas, deceased, died without a will, and left a wife, Myrlie, and three children Mona Duty, Glena Paugh and Glenn Lucas

89.     Myrlie Lucas is deceased.

90.     Glenn Lucas is deceased and died unmarried and without children.

91.     Mona Duty, Plaintiff herein, is alive and resides at 4176 Monterey Dr., Medina, Ohio 44256.

92.     Glena Paugh is deceased, and she had one child, Sheila Owens, who is alive and resides at 108 W. Walnut St., Cardington, Ohio 43315.

93.     All of the living heirs of J.V. Lucas are great-grandchildren of J.V. Lucas, with the exception of Margaret Peck, Amelia Drawl, Thomas Lucas and Gail House, who are grandchildren.

**CAUSE OF ACTION - TRESPASS**

94.    The will of J.V. Lucas was admitted into probate in the Orphans Court of Logan County, West Virginia on January 18, 1961 and recorded at Will Book 19, page 109.

95    Paul Lucas, the eldest son of J.V. Lucas was named the Executor of the Estate of J. V. Lucas.

96.    At the time of the death of J.V. Lucas, J.V. Lucas owned the oil and gas and other minerals underneath the surface of the real estate listed in Exhibit "B" attached hereto.

97.    The Estate of J.V. Lucas was closed in August 5, 1964.

98.    Upon the closing of the Estate of J.V. Lucas, any and all royalties owed for the extraction of oil or gas or other minerals located underneath the surface of the above referenced land owned by J.V. Lucas, were legally required to be paid to the eight living children of J.V. Lucas plus the children of Grady Lucas, and their linear heirs "share and share alike"

99.    However, after the closing of the Estate of J.V. Lucas, the companies that extracted gas located underneath the property of J.V. Lucas knowingly failed to obtain legal leases from the owners of the mineral rights and knowingly failed to pay royalties to the owners of the mineral rights.

100.    None of the surface owners of the above referenced J.V. Lucas property had the right to lease the gas, oil and minerals located underneath their property.

101.    If the oil and gas companies did not have actual notice of the true owners of the gas and oil that oil and gas the companies were extracting from the J.V. Lucas property, the oil and gas companies had constructive notice, since the ownership of the gas and oil was publicly recorded at the Logan County Courthouse and was easily determined by a chain-of-title search.

102.     The following Defendant Companies wrongfully extracted gas from the J.V. Lucas property without the legal right to do so:

       (a)      Addington Exploration, LLC.;

       (b)      Nytis Exploration Co., LLC.;

       (c)      Diversified Gas & Oil Corporation;

       (d)      Cabot Oil & Gas Corp.;

       (e)      P & S Oil & Gas Company;

       (f)      Base Petroleum, Inc.;

       (g)      Mahue Construction Co.;

103.     It is believed and averred that the companies extracting gas or oil or other minerals located underneath the property of J.V. Lucas, knowingly failed to obtain legal leases from the owners of the mineral rights.

104.     At no time has any oil and gas company obtained permission from all the rightful owners of the oil and gas to extract any oil and gas located underneath the property that is the subject matter of this lawsuit

105.     Therefore, the oil and gas companies that extracted resources without the permission of all the owners of the oil and gas, committed a willful and knowing trespass and acted in bad faith when they extracted gas located under the J.V. Lucas property.

106.     Further, by extracting gas wrongfully, without valid leases, the gas and oil companies were unjustly enriched.

### CABOT OIL & GAS OF WEST VIRGINIA CORPORATION

107.     Paragraphs 1 through 105 are hereby incorporated by reference.

108.    Plaintiffs allege that no gas and oil company would commence drilling operations without conducting a title search to confirm the ownership of the gas and mineral rights the company was seeking to extract

109.    It is believed and alleged that when Cabot Oil & Gas of West Virginia Corporation conducted the title search relevant to this case, it saw that when J.V. Lucas died in 1961 he left his gas and oil rights to his nine children, and Cabot Oil & Gas of West Virginia Corporation understood that most if not all of those children had children, and concluded that getting all of the legally required consents and signatures from all the owners of the mineral rights would be a difficult and time-consuming task.

110.    Cabot Oil & Gas of West Virginia Corporation chose not to obtain the necessary permissions to commence drilling operations.

111.    If Cabot Oil & Gas of West Virginia Corporation did not have actual notice of the true owners of the gas and oil the companies were extracting from the J.V. Lucas property, Cabot Oil & Gas of West Virginia Corporation had constructive notice, since the ownership of the gas and oil was publicly recorded at the Logan County Courthouse.

112.    Cabot Oil & Gas of West Virginia Corporation committed a bad faith trespass when it extracted minerals that it knew it had no right to extract.

113.    Cabot Oil & Gas of West Virginia Corporation, without any valid lease, and without valid permission, has extracted gas from the J.V. Lucas mineral property.

114.    Specifically, Cabot Oil & Gas of West Virginia Corporation has extracted gas from the Lucas property at well with **API number 1941** without the permission of all of the mineral owners and without payment of royalties to all the mineral owners.

115.    Cabot Oil & Gas of West Virginia Corporation was unjustly enriched when it extracted minerals from underneath the J.V. Lucas property and made money from the extraction of those minerals when Cabot Oil & Gas of West Virginia Corporation had no legal right to do so.

WHEREFORE, Plaintiff's seek damages in excess of $75,000.00 from Cabot Oil & Gas of West Virginia Corporation

## P & S OIL & GAS

116.    Paragraphs 1 through 114 are hereby incorporated by reference.

117.    Plaintiffs believe and allege that no gas and oil company would commence drilling operations without conducting a title search to confirm the ownership of the gas and mineral rights the company was seeking to extract.

118.    Plaintiff alleges that P & S Oil and Gas conducted a title search to confirm the ownership of the mineral rights where it wanted to drill.

119.    When P & S Oil and Gas conducted the title search it saw that when JV Lucas died in 1961, he left the gas and mineral rights to nine children and P & S Oil and Gas understood that most, if not all, of those children had children, and so on, and concluded that getting all of the legally required consents and signatures from all the owners of the mineral rights would be difficult and time-consuming task.

120.    P & S Oil and Gas chose not to obtain the necessary permissions to commence drilling operations.

121.    If P & S Oil and Gas did not have actual notice of the true owners of the gas and oil it extracted from the J.V. Lucas property, P & S Oil and Gas had constructive notice since the ownership of the gas and oil was publicly recorded at the Logan County Courthouse.

122.    P & S Oil and Gas committed a bad faith trespass when it extracted minerals that it knew it had no right to do so.

123.    P & S Oil and Gas was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

124.    P & S Oil & Gas Co. has extracted gas from the Lucas property at well with **API number 237** without the permission of all of the mineral owners and without payment of royalties to all the mineral owners.

125.    P & S Oil & Gas Co. was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

126.    P & S Oil & Gas Co. committed a bad faith trespass.

127.    Plaintiffs are entitled to receive from P & S Oil & Gas Co. all of the money P & S Oil & Gas Co. made as a result of P & S Oil & Gas Co.'s extraction of gas from the Lucas property, plus interest.

128.    Plaintiffs are entitled to receive punitive damages from P & S Oil & Gas Co.

WHEREFORE, Plaintiff's seek damages in excess of $75,000.00.

## ADDINGTON EXPLORATION, LLC

129.    Paragraphs 1 through 128 are hereby incorporated by reference.

130.    Addington Exploration, LLC, without any valid lease, has extracted gas from the J.V. Lucas mineral property at multiple locations on the Lucas property.

131.    It is believed and alleged that no gas and oil company would commence drilling operations without conducting a title search to confirm the ownership of the gas and minerals the company was seeking to extract

132.     It is alleged that Addington Exploration, LLC conducted a title search to confirm the ownership of the mineral rights where it wanted to drill.

133.     When Addington Exploration, LLC conducted the title search it saw that when JV Lucas died in 1961 that he left the gas and mineral rights to 9 children and understanding that most if not all of those children had children, Addington Exploration, LLC concluded that getting all of the legally required consents and signatures from all the owners of the mineral rights would be difficult and time-consuming task.

134.     Addington Exploration, LLC. chose not to obtain the necessary permissions to commence drilling operations.

135.     If Addington Exploration, LLC. did not have actual notice of the true owners of the gas and oil it extracted from the J.V. Lucas property, Addington Exploration, LLC. had constructive notice since the ownership of the gas and oil was publicly recorded at the Logan County Courthouse.

136.     After Addington Exploration, LLC had been extracting gas, Addington was contacted by William Grant McCarty who claimed that the mineral rights were owned by "Betty Jo McCarty, Executrix".

137.     When William Grant McCarty came into contact with Addington Exploration, LLC, the Estate of J.V. Lucas had been closed 40 years.

138.      When William Grant McCarty came into contact with Addington Exploration, LLC, Betty McCarty was not the "Executrix" of anything and further Betty McCarty was deceased.

139.     Addington Exploration, LLC knew that William Grant McCarty had no authority to grant permission to exploit the minerals located under the J.V. Lucas property.

140.    Addington Exploration, LLC paid royalties to "Betty McCarty, Executrix" even though Betty McCarty was deceased.

141.    Whether Addington Exploration., LLC colluded with William McCarty to formulate a basis for extracting gas and oil from J.V. Lucas land, or not, Addington Exploration, LLC. wrongfully extracted gas and oil from J.V. Lucas land.

142.    Specifically, Addington Exploration, LLC has extracted gas from the Lucas property at wells with **API numbers 1864 and 237** without the permission of all of the mineral owners and without payment of royalties to all the mineral owners and in bad faith.

143.    Addington Exploration, LLC was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

144.    Plaintiffs are entitled to receive from Addington Exploration, LLC all of the money Addington Exploration, LLC made as a result of Addington Exploration, LLC.'s extraction of gas from the Lucas property, plus interest.

145.    Plaintiffs are entitled to receive punitive damages

WHEREFORE, Plaintiff's seek damages in excess of $75,000.00 from Diversified

## NYTIS EXPLORATION CO., LLC

146.    Paragraphs 1 through 145 are hereby incorporated by reference.

147.    Plaintiffs allege that no gas and oil company would commence drilling operations without conducting a title search to confirm the ownership of the gas and mineral rights the company was seeking to extract

148.    Plaintiffs allege that Nytis Exploration Co., LLC conducted a title search to confirm the ownership of the mineral rights where it wanted to drill.

149.     When Nytis Exploration Co., LLC conducted the title search it saw that when JV Lucas died in 1961 he left the gas and mineral rights to nine children and Nytis Exploration Co., LLC understood that most if not all of those children had children, and so on, and concluded that getting all of the legally required consents and signatures from all the owners of the mineral rights would be difficult and time consuming task.

150.     Nytis Exploration Co., LLC chose not to obtain the necessary permissions to commence drilling operations.

151.     If Nytis Exploration Co., LLC did not have actual notice of the true owners of the gas and oil it extracted from the J.V. Lucas property, Nytis Exploration Co., LLC had constructive notice since the ownership of the gas and oil was publicly recorded at the Logan County Courthouse.

152.      Instead, Nytis Exploration Co., LLC contacted or was contacted by an individual named William Grant McCarty who claimed that the mineral rights were owned by Betty McCarty, Executrix of the Estate if J.V. Lucas.

153.     When William Grant McCarty came into contact with Nytis Exploration Co., LLC, the Estate of J.V. Lucas had been closed 40 years.

154.     When William Grant McCarty came into contact with Nytis Exploration Co., LLC, Betty McCarty was not the "Executrix" of anything.

155.     Nytis Exploration Co., LLC knew that William Grant McCarty had no authority to grant permission to exploit the minerals located under the J.V. Lucas property, but justified its extraction of minerals based upon the permission received from William Grant McCarty.

156.     Nytis Exploration Co., LLC paid royalties to "Betty McCarty, Executrix", even though Betty McCarty was deceased.

157.     Whether Nytis Exploration Co., LLC conspired with William McCarty to formulate a basis for extracting gas and oil from J.V. Lucas land, or not, Nytis Exploration Co., LLC wrongfully extracted gas and oil from J.V. Lucas land.

158.     Specifically, Nytis Exploration Co., LLC has extracted gas from the Lucas property at wells with **API numbers: 1864, 237 and 1941** without the permission of all of the mineral owners and without payment of royalties to all the mineral owners.

159.     Nytis Exploration Co., LLC was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

160.     Nytis Exploration Co., LLC has committed a bad faith trespass

161.     Plaintiffs are entitled to receive from Nytis Exploration Co., LLC all of the money Nytis Exploration Co., LLC made as a result of Nytis Exploration Co., LLC's extraction of gas from the Lucas property, plus interest.

162.     Nytis Exploration Co., LLC is liable for punitive damages

WHEREFORE, Plaintiff's seek damages in excess of $75,000.00 from Diversified

## DIVERSIFIED GAS & OIL CORPORATION

163.     Paragraphs 1 through 163 are hereby incorporated by reference.

164.     Diversified Gas & Oil Corporation, without any valid lease, has extracted gas from the J.V. Lucas mineral property since 2019 to the present at multiple locations on the Lucas property.

165.     Plaintiffs allege that no gas and oil company would commence drilling operations without conducting a title search to confirm the ownership of the gas and mineral rights the company was seeking to extract

166.     Plaintiffs allege that Diversified Gas & Oil Corporation conducted a title search to confirm the ownership of the mineral rights where it wanted to drill.

167.     When Diversified Gas & Oil Corporation conducted the title search it saw that when JV Lucas died in 1961, he left the gas and mineral rights to nine children and Diversified Gas & Oil Corporation understood that most if not all of those children had children, and so on, and concluded that getting all of the legally required consents and signatures from all the owners of the mineral rights would be difficult and time-consuming task.

168.      Diversified Gas & Oil Corporation chose not to obtain the necessary permissions to commence drilling operations.

169.     If Diversified Gas & Oil Corporation did not have actual notice of the true owners of the gas and oil Diversified Gas & Oil Corporation extracted and continues to extract from the J.V. Lucas property, Diversified Gas & Oil Corporation has constructive notice since the ownership of the gas and oil is publicly recorded at the Logan County Courthouse.

170.     Instead, Diversified Gas & Oil Corporation contacted or was contacted by an individual named William Grant McCarty who claimed that the mineral rights were owned by "Betty McCarty, Executrix".

171.     When William Grant McCarty came into contact with Diversified Gas & Oil Corporation, the Estate of J.V. Lucas had been closed 40 years.

172.     When William Grant McCarty came into contact with Diversified, Betty McCarty was not the "Executrix" of anything.

173.     Diversified Gas & Oil Corporation knew that William Grant McCarty or the Betty McCarty, Executrix of the Estate if J.V. Lucas had no authority to grant permission to exploit the minerals located under the J.V. Lucas property, but justified its extraction of

minerals based upon the permission received from William Grant McCarty or the Betty McCarty, Executrix.

174.     Diversified Gas & Oil Corporation paid royalties to "Betty McCarty, Executrix", even though Betty McCarty was deceased.

175.     Whether Diversified Gas & Oil Corporation conspired with William McCarty to formulate a basis for extracting gas and oil from J.V. Lucas land, or not, Diversified Gas & Oil Corporation wrongfully extracted gas and oil from J.V. Lucas land.

176.     Diversified Gas & Oil Corporation was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

177.      Diversified Gas & Oil Corporation, without any valid lease, has extracted gas from the J.V. Lucas mineral property since 2019 to the present at multiple locations on the Lucas property in areas covered by the above lease and other areas without any lease.

178.     Specifically, Diversified Gas & Oil Corporation has extracted gas from the Lucas property at wells with **API numbers 1864, 237 and 1941** without the permission of all of the mineral owners and without payment of royalties to all the mineral owners.

179.     Diversified Gas & Oil Corporation was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

180.     Diversified Gas & Oil Corporation has committed a bad faith trespass.

181.     Plaintiffs are entitled to receive from Diversified all of the money Diversified made as a result of Diversified Gas & Oil Corporation's extraction of gas from the Lucas property, plus interest.

182.     Diversified Gas & Oil Corporation is liable for punitive damages.

183.     Insofar as Diversified Gas & Oil Corporation is the successor-in-interest to Nytis Exploration Corporation and Addington Exploration, LLC, the allegations against Addington Exploration, LLC and Nytis Exploration Corporation's above are hereby incorporated by reference.

WHEREFORE, Plaintiff's seek damages in excess of $75,000.00 from Diversified

## BASE PETROLEUM, INC.

400.     Paragraphs 1 through 183 are hereby incorporated by reference.

401.     Plaintiffs allege that no gas and oil company would commence drilling operations without conducting a title search to confirm the ownership of the gas and mineral rights the company was seeking to extract.

402.      Plaintiff alleges that Base Petroleum, Inc. conducted a title search to confirm the ownership of the mineral rights where it wanted to drill.

403.     When Base Petroleum conducted the title search it saw that when JV Lucas died in 1961 he left the gas and mineral rights to nine children and Base Petroleum understood that most, if not all, of those children had children, and so on, and concluded that getting all of the legally required consents and signatures from all the owners of the mineral rights would be difficult and time consuming task.

404.     Base Petroleum chose not to obtain the necessary permissions to commence drilling operations.

405.     If Base Petroleum did not have actual notice of the true owners of the gas and oil it extracted from the J.V. Lucas property, Base Petroleum had constructive notice since the ownership of the gas and oil was publicly recorded at the Logan County Courthouse.

406.    Base Petroleum therefore chose to treat the fraudulent lease referenced above as if it were valid so that it could commence drilling and thus commence making money.

407.    Base Petroleum committed a bad faith trespass when it extracted minerals that it knew it had no right to do so.

408.    Base Petroleum was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

409.    Base Petroleum has extracted gas from the Lucas property at well with **API number 910** without the permission of all of the mineral owners and without payment of royalties to all the mineral owners.

410.    Base Petroleum was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

411.    Base Petroleum. committed a bad faith trespass.

412.    Plaintiffs are entitled to receive from Base Petroleum all of the money Base Petroleum. made as a result of Base Petroleum's extraction of gas from the Lucas property, plus interest.

413.    Plaintiffs are entitled to receive punitive damages from Base Petroleum.

WHEREFORE, Plaintiff's seek damages in excess of $75,000.00.

## MAHUE CONSTRUCTION CO.

414.    Paragraphs 1 through 413 are hereby incorporated by reference.

415.    Plaintiffs believe and allege that no gas and oil company would commence drilling operations without conducting a title search to confirm the ownership of the gas and mineral rights the company was seeking to extract.

416.    Plaintiff alleges that Mahue Construction Co. conducted a title search to confirm the ownership of the mineral rights where it wanted to drill.

417.    When Mahue Construction Co.conducted the title search it saw that when JV Lucas died in 1961 he left the gas and mineral rights to nine children and Base Petroleum understood that most, if not all, of those children had children, and so on, and concluded that getting all of the legally required consents and signatures from all the owners of the mineral rights would be difficult and time consuming task.

418.    Mahue Construction Co.chose not to obtain the necessary permissions to commence drilling operations.

419.    If Mahue Construction Co. did not have actual notice of the true owners of the gas and oil it extracted from the J.V. Lucas property, Base Petroleum had constructive notice since the ownership of the gas and oil was publicly recorded at the Logan County Courthouse.

420.    Mahue Construction Co.therefore chose to treat the fraudulent lease referenced above as if it were valid so that it could commence drilling and thus commence making money.

421.    Mahue Construction Co.committed a bad faith trespass when it extracted minerals that it knew it had no right to do so.

422.    Mahue Construction Co. was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

423.    Mahue Construction Co. has extracted gas from the Lucas property at well with **API number 910** without the permission of all of the mineral owners and without payment of royalties to all the mineral owners.

424.    Mahue Construction Co. was unjustly enriched when it extracted minerals and made money from the extraction of those minerals when it had no legal right to do so.

425.     Mahue Construction Co. committed a bad faith trespass.

426.     Plaintiffs are entitled to receive from Mahue Construction Co. all of the money Mahue Construction Co.. made as a result of Base Petroleum's extraction of gas from the Lucas property, plus interest.

427.     Plaintiffs are entitled to receive punitive damages from Base Petroleum.

WHEREFORE, Plaintiff's seek damages in excess of $75,000.00.

## WILLIAM GRANT MCCARTY

428.     Paragraphs 1 through 427 are hereby incorporated by reference.

429.     William Grant McCarty is one of the great grandchildren of J.V. Lucas.

430.     After the death of Paul Lucas, who died on August 27, 2003, it is known that Defendants Addington Exploration, LLC, Nytis Exploration Co., LLC, and Diversified Gas & Oil Corporation made royalty payments to "Betty Jo McCarty, Executrix".

431.     At the time these payments were made, Betty Jo McCarty was dead, having died on April 29, 2002.

432.     Betty Jo McCarty has never been the "Executrix" of anything.

433.     The payments were sent to William McCarty, Betty Jo McCarty's son, and Defendant herein.

434.     Certain royalties were also paid to William McCarty directly.

435.     Upon the death of Paul Lucas, William Grant McCarty approached various oil and gas development companies operating or seeking to operate on J.V. Lucas land, claiming to speak for "Executrix Betty McCarty".

436.     When William Grant McCarty contacted the oil and gas development companies claiming to speak on behalf of Betty McCarty, Betty McCarty was deceased.

437.    When William Grant McCarty contacted the oil and gas development companies, his purpose in doing so was to provide the oil and gas development companies a basis for the oil and gas development companies to justifying the extraction of oil and gas from the J.V. Lucas property.

438.    Both William Grant McCarty and the oil and gas companies that William Grant McCarty contacted, knew that William Grant McCarty, on his own, or in the capacity of agent for "Betty McCarty, Executrix", did not possess any authority to grant permission to any oil and gas company to extract gas or oil from J.V. Lucas property.

439.    By utilizing William Grant McCarty's ostensible permission to operate on J.V. Lucas land, the oil and gas development companies, formulated a basis to justify the operation of drilling operations on the J.V. Lucas land.

440.    By utilizing William Grant McCarty's ostensible permission, the oil and gas companies could avoid the difficult and time-consuming effort of obtaining the permission of all of J.V. Lucas' lineal heirs in order to operate on J.V. Lucas land.

441.    In order to complete the plan of formulating a basis to operate on J.V. Lucas land, the oil and gas companies agreed to pay royalties to "Betty McCarty, Executrix" or directly to William Grant McCarty.

442.    Both the oil and gas companies and William Grant McCarty knew the payments were unlawful in that all the persons entitled to receive the royalties were not being paid.

443.    William Grant McCarty is liable to all living lineal heirs of J.V. Lucas to pay to all living lineal heirs the excess royalty payments he received based upon his wrongful conversion of excess royalty payments to his own use, which royalty payments are owing to all living lineal heirs of J.V. Lucas.

444.     William Grant McCarty is liable to all living lineal heirs of J.V. Lucas to pay to all living lineal heirs the excess royalty payments he received based upon his being unjustly enriched by his receipt of the royalty payments.

445.     William Grant McCarty is liable to all living lineal heirs of J.V. Lucas to pay to all living lineal heirs the excess royalty payments he received based upon his profiting from an unlawful conspiracy with various oil and gas companies designed to deprive all living lineal heirs of J.V. Lucas their rightful royalties.

446.     William Grant McCarty is liable for punitive damages.

447.     Plaintiff alleges that the gas and oil companies that colluded with William Grant McCarty are Addington Exploration, LLC, Nytis Exploration Co., LLC, and Diversified Gas & Oil Corporation however, there may be other companies involved that the Plaintiffs do not currently know.

WHEREFORE, Plaintiffs demand judgment against William Grant McCarty in an amount in excess of $75,000.00.

**INDISPENSABLE PARTIES-CHARGING LIEN**

448.     Paragraphs 1 through 447 are hereby incorporated by reference.

449.     The Indispensable Parties named above are the living lineal heirs of J.V. Lucas who have currently chosen not to participate in this lawsuit

450.     In the event a fund is created as a result of this lawsuit which benefits the indispensable parties, Plaintiffs' counsel asserts a charging lien on any such fund based upon the fact that the fund was created through the efforts of Plaintiffs' counsel, and that there would be no fund, but for the efforts of Plaintiffs counsel.

451.    A lawyer who recovers a common fund for the benefit of persons other than his client is entitled to a reasonable attorney's fee from the fund as a whole.

452.    The attorneys' lien asserted against any fund creating for the benefit of the indispensable parties shall be equal to the the amount paid by the Plaintiffs for fees and expenses.

WHEREFORE, Plaintiffs' counsel asserts a charging lien against each Indispensable Party's recovery in this case in an amount equal to the amount paid by each Plaintiff for fees and expenses, which lien is in excess of $75,000.00.

Respectfully submitted,

By:    s/ John Newborg_____            By:    s/ Joseph Spano____
       JOHN NEWBORG, Esquire                    JOSEPH SPANO, ESQUIRE
       I.D. No. 22276                           WV ID 11373
       225 Ross Street, 4th Floor               Pritt & Spano
       Pittsburgh, PA 15219                     716 Lee Street East, Suite 204
       (412) 874-9442                           Charleston, WV 25301
       newborglaw@gmail.com                     (304) 513-4082
       Pro Hac Vice Pending                     jspano@yourwvlawfirm.com