IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MOINA FONTANEZ, et al.,

        Plaintiffs,

v.                              CIVIL ACTION NO.  2:22-cv-00232

DIVERSIFIED GAS & OIL CORPORATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The issue before the Court is whether Plaintiffs have failed to prosecute this civil action. For the reasons discussed below, the Court finds that they have and **DISMISSES** this action **WITHOUT PREJUDICE**.

*I.    BACKGROUND*

On May 20, 2022, seventeen plaintiffs collectively filed this lawsuit, identifying themselves as the heirs of J.V. Lucas: Amelia Drawl, Moina Fontanez, Gail House, DeWanda King, Paul Lucas, Robert Lucas, Thomas Lucas, William Lucas, Winford Lucas, James Lucas, Jr., Sidney Lucas, Jr., Sheila Owens, Margaret Peck, Timothy Queen, James Shumar, John Shumar, and Shaun Witholt ("Plaintiffs"). (ECF No. 1.) Approximately seven months later, Plaintiffs' counsel filed a motion for leave to withdraw from representation, citing irreconcilable differences with the Plaintiffs. (ECF No. 62.) The Court granted the motion and ordered Plaintiffs to obtain new counsel by August 6, 2023. (ECF No. 63.)

Running in the opposite direction, Plaintiffs broke into two factions: the Represented Plaintiffs, who are represented by Mr. Ryan Mick, and the *Pro Se* Plaintiffs. (*See* ECF No. 110 at 2.) The members of these groups are ever-changing,[1] and, at times, Mr. Mick does not even appear to know who he is representing.[2] One thing is certain, though: the factions of Plaintiffs disagree on how to prosecute the case.

During a status conference held on September 5, 2023, the Court encouraged the *Pro Se* Plaintiffs to obtain counsel and gave them an additional 30 days to do so. (ECF No. 70.) They did not heed the Court's advice.

The Court held a follow up status conference on October 16, 2023, at which point the Represented Plaintiffs indicated they would be filing a second amended complaint. (ECF No. 72.) As promised, the Represented Plaintiffs filed their motion for leave to file a second amended complaint on November 2, 2023. (ECF No. 75). The *Pro Se* Plaintiffs did not join in the motion or file their own motions to amend. This was problematic because nothing in the Federal Rules of Civil Procedure permits a case to proceed under two, distinct complaints.

After full briefing on the motion, the Court held another telephonic status conference addressing the pending motion and the schism between the two groups of Plaintiffs. (ECF No. 86.) During this conference, the Court denied the motion for leave to file a second amended complaint and informed the parties that the case would not progress unless the Plaintiffs could

---

[1] At this point, the Represented Plaintiffs appear to be Moina Fontanez, Gail House, Paul Lucas, Robert Lucas, Sidney Lucas, Jr., Thomas Lucas, Winford Lucas, and Timothy Queen, and the *Pro Se* Plaintiffs appear to consist of Amelia Drawl, DeWanda King, James Lucas, Jr., William Lucas, Sheila Owens, Margaret Peck, James Shumar, John Shumar, and Shaun Witholt.

[2] On August 7, 2023, Mr. Mick indicated he was representing Sheila Owens, (ECF No. 67), but she later indicated that she was not represented by Mr. Mick, (*see* ECF No. 94). During the April 22, 2025 telephonic status conference, Mr. Mick stated he was representing John Shumar, who immediately clarified that he was, in fact, not represented by Mr. Mick.

2

collectively "reach an agreement on how to prosecute the matter." (ECF No. 87.) Although Mr. Mick contended that there was no way to move forward as a unified group of Plaintiffs due to "irreconcilable differences," the Court noted that certain plaintiffs may be dismissed for failure to prosecute if they choose not to participate in proceedings.[3] (*See* ECF No. 87-1.)

Thereafter, the *Pro Se* Plaintiffs sent a letter to the Court "asking to sue [several] parties" that were "involved in different matters regarding JV Lucas properties, surfaces, and minerals," (ECF Nos. 89 and 89-1), which the Court construed as a motion for leave to file an amended complaint. This letter-form motion sought to add new party defendants, *including several of the Represented Plaintiffs*, from whom they seek "restitution," and makes broad allegations of wrongdoing—including identity fraud and theft— by unspecified parties without providing factual support for any legal claims. (ECF Nos. 89 and 89-1.) Defendants promptly responded in opposition to the motion. (ECF Nos. 91, 93.)

While the *Pro Se* Plaintiffs never filed a reply to Defendants' responses, several members of the faction did send a litany of letters to the Court over the next month:

- The first was a letter from James Shumar addressed to Mr. Mick expressing an interest in retaining him on the condition that he amend the complaint to include claims for identity theft and fraud. (ECF No. 92.) It is unclear whether this letter was sent to Mr. Mick before it was filed on the docket. (*See id.*)

- A few days later, Sheila Owens filed a letter addressed to the Court, claiming that she had left a voicemail with Mr. Mick about possible representation but never received a call back. (ECF No. 94.) She also attached a letter that she apparently

---

[3] None of the *Pro Se* Plaintiffs attended the call because they allegedly did not receive notice of the hearing, but the transcript of the hearing was later provided to all parties. (*See* ECF No. 87.)

- sent to Mr. Mick, indicating that she was only interested in his representation if he would amend the complaint to include "all the facts and all the wrong doing." (*Id.* at 1.)

- James Shumar then sent another letter to the Court claiming that the *Pro Se* Plaintiffs are "trying to comply" with the Court's order to reach an agreement on how to prosecute the matter but that Mr. Mick would not respond to their inquiries for representation. (ECF No. 96.)

- Finally, on April 24, 2024, Amelia Drawl sent a letter to the Court, along with a copy of a letter she sent to Mr. Mick inquiring about representation, indicating that the *Pro Se* Plaintiffs had agreed to join the Represented Plaintiffs. (ECF No. 97.)

However, nothing was ever filed with the Court showing that any of the *Pro Se* Plaintiffs and Mr. Mick reached any agreement on representation.[4] Indeed, Mr. Mick never filed anything to indicate that he responded to these letters.

After that, the *Pro Se* Plaintiffs filed a flurry of other motions. In total, there were five, identical letter-form motions for a permanent injunction. (ECF Nos. 99, 100, 101, 103, 104.) Defendants filed responses in opposition. (ECF Nos. 102, 105.) Seemingly surprised that the Court did not act on these motions—despite its promise that the case would not progress until the Plaintiffs acted as a unified group—the *Pro Se* Plaintiffs then filed four, identical letter-form motions for a hearing on the motions for permanent injunction. (ECF Nos. 106, 107, 108, 109.)

During a telephonic status conference on April 22, 2025, it was clear that the Plaintiffs had not reached an agreement. At that point, the Court gave the Plaintiffs notice that it may dismiss

---

[4] In the midst of these letters, the Court also received an unsigned letter from "The JV Lucas Heirs Plaintiffs" requesting additional discovery. (ECF No. 95.)

the case for failure to prosecute. On April 24, 2025, the Court ordered Plaintiffs to show cause in writing, no later than May 15, 2025, as to why this civil action should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (ECF No. 112.)

The *Pro Se* Plaintiffs filed ten separate responses to the Court Order. (*See* ECF Nos. 114–16, 118–23, 126.) Some of these responses are identical, (*see* ECF Nos. 14, 15), but all make the same substantive arguments. Beyond restating the basis of their claims, (*see* ECF Nos. 118, 120, 121, 123), the *Pro Se* Plaintiffs' main contention is that Mr. Mick and defense counsel have violated their constitutional rights by excluding them from discovery, (*see* ECF Nos. 114–16, 119, 126). Mr. Mick waited until May 15, 2025—the last day—to file a meager, four-page response. (ECF No. 125.) None of the Plaintiffs' responses recite or engage with any legal standard. Instead, these filings highlight the *Pro Se* Plaintiffs' inability to properly represent themselves, Mr. Mick's consistent litigative lassitude, and all Plaintiffs' refusal to prosecute this matter on a united front.

Nevertheless, this issue is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

The Court has authority under Rule 41(b) to dismiss a case with prejudice, on its own motion, for failure to prosecute. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629-31 (1962). "While the power to dismiss clearly lies with the district court[]," it must weigh "the power to prevent delays" against "the sound public policy of deciding cases on their merits." *Hillig v. Comm'r*, 916 F.2d 171, 173–74 (4th Cir. 1990) (internal quotations and citations omitted). Thus, the Court must consider four factors: "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately

proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Id.* at 174 (internal citations omitted). These factors do not represent a "rigid, formulaic test," but instead assist the Court, in tandem with the particular circumstances of each case, in determining whether dismissal is appropriate. *See Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989). The Fourth Circuit has also held that "[w]here a litigant has ignored an express warning that non-compliance with a court order will result in dismissal, [a] court should dismiss the case." *Bey ex rel. Graves v. Virginia*, 546 F. App'x 228, 229 (4th Cir. 2013) (citing *Ballard*, 882 F.2d at 95-96 (4th Cir. 1989)); *see also Douglas v. Heater*, 2:20-cv-00856, 2021 WL 784806, at *2 (S.D.W. Va. Mar. 1, 2021) (Goodwin, J.) (applying *Graves* and dismissing a civil action pursuant to Rule 41(b) due to Plaintiff's failure to prosecute).

### III. DISCUSSION

There is no doubt that Plaintiffs have failed to prosecute this case. Application of the Fourth Circuit's four-factor test supports this conclusion.

#### A. *The Plaintiffs' Degree of Personal Responsibility*

With regard to the first factor, there is no evidence that anyone other than Plaintiffs are responsible for their lack of prosecution. Rather, the lack of forward progress in this matter is attributable solely to Plaintiffs' own conduct by failing to reach an agreement on how to prosecute the matter. The Court expressly placed responsibility for moving the case forward in Plaintiffs' hands. (*See, e.g.*, ECF No. 87 (informing the parties that the case would not progress unless the Plaintiffs could collectively "reach an agreement on how to prosecute the matter").) However, Plaintiffs have not taken any meaningful action in response.

Instead, the *Pro Se* Plaintiffs subsequently filed a motion for leave to file a second amended

complaint, (ECF Nos. 89 and 89-1), wherein they sought to add several of the Represented Plaintiffs as defendants. Even in their responses to the Court's show cause order, the *Pro Se* Plaintiffs accuse Mr. Mick (and defense counsel) of violating their constitutional rights. (*See* ECF Nos. 114–16, 119, 126.) Thus, it is clear that the *Pro Se* Plaintiffs are still not willing to work cooperatively with the Represented Plaintiffs. The only argument any *Pro Se* Plaintiff presented that even potentially weighs against dismissal is that every attorney they have retained has withdrawn, and they are still seeking new counsel. (*See* ECF No. 122.) However, this has been a consistently unkept promise throughout this litigation.

Unsurprisingly, Mr. Mick tries to throw the *Pro Se* Plaintiffs under the bus, (*see generally* ECF No. 125), but the Represented Plaintiffs are not blameless either. The *Pro Se* Plaintiffs have filed letters indicating that they have attempted to contact Mr. Mick and never received a response. (ECF Nos. 94, 96; *see also* ECF No. 126 (claiming that, to date, Mr. Mick never responded).) Of course, Mr. Mick is in a difficult position because the *Pro Se* Plaintiffs originally only agreed to his representation on the express contingency that he agree to file frivolous claims on their behalf. (ECF Nos. 92–94.) However, in addition to allegedly not responding to the *Pro Se* Plaintiffs' inquiries, Mr. Mick did not file a response to any of the letters the *Pro Se* Plaintiffs filed—not even the *Pro Se* Plaintiffs' letter to the Court indicating that they agree to his representation. (*See* ECF No. 97.) Apparently, Mr. Mick sees no purpose in trying to reach an agreement, (*see* ECF No. 87-1 (citing "irreconcilable differences")), or even responding to Court filings discussing his lack of response. The Court noted all of these deficiencies in its show cause order, (ECF No. 112), but—of course—Mr. Mick did not address any of them in his response, (ECF No. 125).

Instead, Mr. Mick is desperate to blame anyone but himself. He even goes so far as to

imply that it is the Court's fault that this case has not progressed. Although Mr. Mick evidently "appreciate[s] the Court's dilemma," he claims that "the Court brought all activity in the case to a halt, despite the Representative Plaintiffs' desire to prosecute the case." (ECF No. 125 at 3–4, ¶¶ 16–17.) Then, he summarily states, without any factual support, that the Represented Plaintiffs have "actively and consistently prosecuted their claims" and "met every obligation required to move this case forward." (*Id.* at 4, ¶¶ 17–18.)

Really?

Let's start with the obvious: this is the *Plaintiffs'* dilemma—not the Court's. The *Plaintiffs* are seeking legal recourse for alleged injuries—not the Court. Consequently, the *Plaintiffs* have everything to win or lose in this matter—not the Court. Yet, the *Plaintiffs* fail to agree on an operative complaint—not the Court. Thus, the *Plaintiffs* brought all activity in this case to a halt—not the Court.

Additionally, the Represented Plaintiffs have not, in fact, met every obligation required to move this case forward. Namely, the Represented Plaintiffs have not "reach[ed] an agreement on how to prosecute the matter" with the *Pro Se* Plaintiffs. (ECF Nos. 86, 87, 110 at 3.) Highlighting the *Pro Se* Plaintiffs' shortcomings is easy, but a dispute takes two.

Further, how exactly have the Represented Plaintiffs "actively and consistently" prosecuted their claims? Even if there was no way to move forward as a unified group of Plaintiffs due to "irreconcilable differences," (*see* ECF No. 87-1), there is no indication that Mr. Mick has sought other recourse under the Federal Rules of Civil Procedure. For example, Mr. Mick did not move under Rule 41(b) to have the *Pro Se* Plaintiffs dismissed for failure to comply with the Federal Rules of Civil Procedure. (*Cf.* ECF No. 98 (Defendants' motion under Rule

8

41(b)).) Mr. Mick did not move under Rule 41 to voluntarily dismiss the Represented Plaintiffs claims and refile a new lawsuit. *See* Fed. R. Civ. P. 41(a)(2) (permitting dismissal at plaintiff's request "on terms that the court considers proper"). Mr. Mick did not move under Rule 21 to sever the claims. *See* Fed. R. Civ. P. 21 (permitting severance of claims into a new, separate lawsuit). Although some or even all of these avenues may have been unsuccessful, it is beyond disingenuous to claim "active[] and consistent[] prosecut[ion]" when, in reality, Mr. Mick has done nothing at all.

True, a dismissal sanction is usually inappropriate when it unjustly penalizes a blameless client for the attorney's behavior. *Hillig*, 916 F.2d at 174. However, the Represented Plaintiffs must bear "some measure of responsibility both for selecting competent attorneys," and "for supervising their conduct in representing them." *Doyle v. Murray*, 938 F.2d 33, 35 (4th Cir. 1991). After retaining Mr. Mick, the Represented Plaintiffs—despite the Court's consistent direction to come together as a unified front—have apparently failed to follow up with Mr. Mick to ensure that the case would proceed. In that sense, the Represented Plaintiffs are not blameless for Mr. Mick's inaction. *See Smink v. Comm'r*, 85 F.3d 617 (4th Cir. 1996) (using *Doyle* to reason that the plaintiffs "failed to follow up with counsel to ensure that the deadlines were met and the case prepared for trial"). Instead, it is apparent that, like Mr. Mick, the Represented Plaintiffs have been satisfied to sit idly and wait for the Court to fix *their* procedural dilemma, despite abundantly clear notice that it will not.

Therefore, all Plaintiffs' failure to reach an agreement on how to prosecute the matter renders them solely responsible for the lack of forward progress in this matter. *See Favors v. Hickey*, 1:05-cv-0697, 2006 WL 1644180, at *2 (S.D. W. Va. June 12, 2006) (Faber, C.J.) (finding

the plaintiff's inaction to be the sole cause of four-month delay in proceedings, weighing in favor of dismissal under the first *Hillig* factor).

### B. Amount of Prejudice to the Defendants

The second factor, addressing the prejudice to the defendants resulting from the failure to prosecute, also weighs in favor of dismissal. Because the Plaintiffs have refused to proceed as a unified front, Defendants have been forced to expend legal fees in reviewing and responding to motions filed by both the *Pro Se* Plaintiffs and the Represented Plaintiffs. (ECF No. 98 (discussing the "procedural quagmire of defending two actions in one proceeding"); ECF No. 117 (discussing how the Plaintiffs have "needlessly increase[d] the cost of litigation").) Defendants have also had to pay for counsels' time spent attending telephonic status conferences related to Plaintiffs' status. As such, Plaintiffs' actions have left Defendants "in limbo as to the status of the case against them and caused them to incur additional expenses." *J.M. v. Logan Cnty. Bd. of Educ.*, No. 2:15-CV-04822, 2016 WL 164323, at *2 (S.D. W. Va. Jan. 13, 2016) (Johnston, J.). To date, Plaintiffs are still unable to come together as a unified front and, thus, would only continue to force Defendants to incur additional expenses in the course of resolving the Plaintiffs' procedural dilemma and defending against multiple, divergent theories of liability in the meantime. *See Ramsey v. Rubenstein*, No. 2:14-CV-03434, 2016 WL 5109162, at *3 (S.D. W. Va. Sept. 19, 2016) (Johnston, J.) (reasoning that "Defendants would be placed in a difficult position," by being "forced to proceed in a case which Plaintiff has no apparent intention of trying").

Therefore, the Court finds that Defendants have suffered some prejudice and will continue to do so if this case proceeds.

### C. *A Drawn-out History of Deliberately Proceeding in a Dilatory Fashion*

The third factor also weighs in favor of dismissal. This factor considers "the presence or absence of a 'drawn out history' of 'deliberately proceeding in a dilatory fashion.'" *Davis*, 588 F.2d at 70 (quoting *McCargo*, 545 F.2d at 396). The term "deliberately" means to act knowingly or purposely. *See Knowingly*, *Black's Law Dictionary* (12th ed. 2024); *Purposely*, *Black's Law Dictionary* (12th ed. 2024); *see also Deliberately, Merriam-Webster's Dictionary* (2025) ("[W]ith full awareness of what one is doing[;] in a way that is intended or planned"); *Deliberately*, *Oxford English Dictionary* (2020) ("[O]n purpose rather than by accident; intentionally").

Here, there is no evidence of *deliberate* inaction. Nevertheless, the fact remains that there have been substantial delays on rather routine processes in this litigation due to Plaintiffs' inaction. This case has been pending for *three years* but has yet to progress past the motion to dismiss stage due to Plaintiffs' schism.

Therefore, the third factor weighs against Plaintiffs. *See Ramsey*, 2016 WL 5109162 (finding that the third factor weigh in favor of dismissal despite no evidence of deliberate delays); *Hanshaw v. Wells Fargo Bank, N.A.*, No. 2:11-CV-00331, 2014 WL 4063828, at *4 (S.D. W. Va. Aug. 14, 2014) (Johnston, J.) (finding that the third factor weighed in favor of dismissal where the plaintiffs' total failure to participate in the case after a stay was lifted demonstrated "*only* a history of dilatory action by Plaintiffs").

### D. *The Effectiveness of Sanctions Less Drastic than Dismissal*

The fourth and final *Hillig* factor—the effectiveness of sanctions less drastic than dismissal—also weighs in favor of dismissal. The Court has considered available sanctions, including those less drastic than dismissal, such as monetary sanctions, discovery penalties, or

11

partial dismissal. But these lesser sanctions would be insufficient in light of the fact that Plaintiffs have chosen to ignore successive warnings that the case will not progress unless they come to an agreement on how to proceed. (ECF Nos. 86, 87, 110 at 3.)

The Plaintiffs' responses to the Court's order do nothing but support this conclusion. Instead of presenting any arguments as to why this matter should not be dismissed, the *Pro Se* Plaintiffs' responses seek to assert additional claims against Mr. Mick. (*See* ECF Nos. 114–16, 119, 126.) The Represented Plaintiffs only blame others, as discussed above, without indicating how this case can proceed. (*See* ECF No. 125.) Mr. Mick does attach a proposed order, which would dismiss the *Pro Se* Plaintiffs, (ECF No. 125-1), but (1) does not move for dismissal of the *Pro Se* Plaintiffs, (2) does not provide an argument under any Federal Rule of Civil Procedure on how or why the *Pro Se* Plaintiffs should be dismissed, or (3) explain how the case could proceed without the *Pro Se* Plaintiffs, (*see generally* ECF No. 125), who may well be necessary parties to the litigation, *see* Fed. R. Civ. P. 19. These paltry responses indicate that the Plaintiffs have neither any intention of working together nor any concern for the consequences, despite the imminent threat of dismissal.

Given that the Court's warnings have evidently fallen on deaf ears, it is unlikely that any sanction short of dismissal would induce Plaintiffs to proceed in their prosecution of this case. *See Ballard*, 882 F.2d at 95–96 (finding that the plaintiff's noncompliance with show cause order left district court with "little alternative to dismissal" because "[a]ny other course would have placed the credibility of the court in doubt and invited abuse"); *Dickerson v. Board of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1117 (7th Cir. 1994) ("Where the pattern of dilatory conduct is clear, dismissal need not be preceded by the imposition of less severe sanctions." (citing *Ball v.*

*City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993))). Therefore, the fourth factor weighs against Plaintiffs.

Accordingly, this civil action is **DISMISSED** for failure to prosecute.

### IV.     CONCLUSION

For these reasons, the Court **DISMISSES** this civil action **WITHOUT PREJUDICE** under Rule 41(b) and **DIRECTS** the Clerk to remove the case from the Court's docket. Further, the Court **DENIES AS MOOT** the following motions: five motions for injunctive relief, (ECF Nos. 99–101, 103, 104); four motions for a hearing, (ECF No. 106–109); and Defendant William Grant McCarty's motion for sanctions, (ECF No. 117).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     June 11, 2025

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

13